UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceedings |
| **LEGACY CARES, INC.,** | Case No: 2:23-bk-02832-DPC |
| Debtor. | Adversary No. 2:24-ap-00062-DPC |
| **AZ ATHLETIC ASSOCIATES LLC, a Delaware Limited Liability Company,** | |
| Plaintiff, | **UNDER ADVISEMENT ORDER RE MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY CLAIMS** |
| v. | |
| **NATIONAL SPORTS OPPORTUNITY PARNTERS, LLC, a North Dakota Limited Liability Company,** | (Not for Publication – Electronic Docketing ONLY) [1] |
| Defendant, Counterclaimant, and Third-Party Plaintiff, | |
| v. | |
| **AZ ATHLETIC ASSOCIATES LLC, a Delaware Limited Liability Company; MICHAEL BURKE; and J. DOE BURKE**, | |
| Counter-Defendants and Third-Party Defendants. | |

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

Before this Court is the Motion to Dismiss ("Motion to Dismiss") filed by AZ Athletic Associates LLC ("AAA") and Michael Burke ("Mr. Burke") seeking dismissal of National Sports Opportunity Partners, LLC's ("NSOP") counterclaims for conversion, unjust enrichment, replevin, and NSOP's request for relief from an order of this Court. After considering the parties' briefs and arguments, especially their oral arguments responding to a tentative order[2] issued by the Court in advance of oral argument, the Court grants the Motion to Dismiss as to NSOP's spousal liability claim, replevin claim, and unjust enrichment claim as to Mr. Burke, and as to NSOP's request for relief from this Court's order. The Court denies AAA's Motion to Dismiss with respect to NSOP's conversion claims against AAA and Mr. Burke and as to NSOP's unjust enrichment claim as to AAA only. The Court's analysis is set forth below.

I. BACKGROUND

Beginning in 2020, Legacy Cares, Inc. ("Debtor"), through its manager, Legacy Sports USA, LLC ("Legacy Sports"), began development of a sports park (the "Park").[3] As part of that effort, in July 2021, Legacy Sports entered into a lease agreement (the "Lease Agreement") with NSOP whereby NSOP would assemble and allow the use of a 11,880-square-foot Pickleball Championship Court Shade Structure (the "Shade Structure").[4] On May 1, 2023 ("Petition Date"), Debtor filed a voluntary chapter 11 bankruptcy petition with the intent to sell the Park.[5] On November 21, 2023, Debtor entered into an Asset Purchase Agreement ("APA") with AAA for the sale of substantially all of Debtor's assets, including Debtor's leasehold interests and other enumerated rights under a then-existing ground lease ("Ground Lease").[6] Upon Debtor's

---

[2] Adversary proceeding (the "Adversary Proceeding") Docket Entry ("DE") 36 (the "Tentative Order").
[3] DE 12 at page 17.
[4] DE 12 at pages 21 and 36.
[5] Administrative Case Docket Entry ("Admin DE") 1.
[6] Admin DE 619.

Motion to sell[7], the Court entered an order approving the sale between Debtor and AAA ("Sale Order").[8]

Soon thereafter, a dispute arose between AAA and NSOP as to who owns the Shade Structure. In February 2024, AAA filed a Motion seeking clarification of the Sale Order and argued that the Shade Structure had been transferred as part of the APA.[9] NSOP claims it owns the Shade Structure and has the right to remove it from the pickleball stadium.[10] After briefing and oral argument, the Court ordered AAA to commence this Adversary Proceeding to properly bring its request for a declaratory judgment.[11]

On March 29, 2024, AAA filed its complaint ("Complaint") requesting that the Court enter judgment declaring (1) the Shade Structure is part of the realty upon which the Shade Structure sits, and (2) that AAA, as purchaser of all of Debtor's rights under the Ground Lease, is entitled to use of the Shade Structure without interference from NSOP.[12] NSOP filed an answer and third-party complaint asserting the following counterclaims: conversion, unjust enrichment, replevin, and limited request for relief from Sale Order.[13] NSOP asserted these counterclaims against AAA, AAA's president, Mr. Burke, in his individual capacity, and the spouse of Mr. Burke ("J. Doe Burke"). [14]

On May 23, 2024, AAA[15] filed a Motion to Dismiss NSOP's counterclaims.[16] AAA argues that no conversion could be found based on the presented facts because AAA had merely brought to this Court a bona-fide dispute as to ownership of the Shade

---

[7] Admin DE 335.
[8] Admin DE 622.
[9] Admin DE 713.
[10] NSOP claims the Shade Structure is worth $800,000+.
[11] Admin DE 742.
[12] DE 1 at page 9.
[13] DE 9 at pages 28–34.
[14] DE 9 at page 16.
[15] Mr. Burke joined in the Motion to Dismiss. For ease of reference, this Order refers to AAA and Mr. Burke collectively as "AAA."
[16] DE 23.

Structure and that the retained possession pending the Court's determination of the dispute.[17] Similarly, AAA argues NSOP cannot show unjust enrichment because AAA's alleged enrichment is justified given the good faith dispute as to who possesses ownership rights to the Shade Structure.[18] Next, AAA argues NSOP's unjust enrichment claim is barred because NSOP has a contractual remedy under the Lease Agreement.[19] AAA further contends that Mr. Burke cannot be held liable for the debts of AAA.[20] AAA argues that NSOP has not stated a claim upon which relief can be granted under Arizona's replevin statutes or common law replevin.[21] AAA also argues that NSOP's request for relief from the Sale Order is improper at this stage.[22] Finally, AAA argues that claims against any potential spouse of Mr. Burke should be denied as he is not married.[23]

NSOP objects to AAA's Motion to Dismiss and argues that Mr. Burke is personally liable for all claims due to his personal involvement in the sale process and negotiations with NSOP.[24] Further, NSOP argues that it had properly conversion and that AAA's arguments regarding a bona-fide dispute are nothing more than a good-faith defense, which defense is barred in Arizona.[25] NSOP also contends that AAA's actions are unjust on their face, the Lease Agreement does not bar the unjust enrichment claim, and AAA is benefiting from the use of the Shade Structure.[26] NSOP asserts that replevin is warranted upon judgment in NSOP's favor.[27] Additionally, NSOP argues that its motion for relief from the Sale Order is ripe and timely because it was submitted within a reasonable time after the Sale Order.[28] Finally, NSOP agrees to the voluntary dismissal

---

[17] DE 23 at pages 6–7.
[18] DE 23 at pages 8–9.
[19] DE 23 at page 9.
[20] DE 23 at page 9–10.
[21] DE 23 at pages 10–11.
[22] DE 23 at pages 11–12.
[23] DE 23 at pages 12–13.
[24] DE 28 at pages 5–6.
[25] DE 28 at pages 7–9.
[26] DE 28 at pages 9–12.
[27] DE 28 at page 13.
[28] DE 28 at pages 14–15.

of its spousal liability claim against J. Doe Burke based on Mr. Burke's representation that he is not married.[29]

In reply, regarding the conversion claim, AAA argues that NSOP wrongly conflates a good-faith defense with submitting a bona-fide dispute for determination by the Court.[30] AAA reiterates that NSOP cannot maintain an action for unjust enrichment against AAA or Mr. Burke.[31] AAA states that NSOP's objection to the Motion to Dismiss still fails to show how it would be entitled to replevin.[32] AAA also argues that any relief from the Sale Order is either unripe or unnecessary at this stage.[33]

At oral argument, the parties added additional layers to their arguments in an effort to be responsive to the Tentative Order.

## II. JURISDICTION

The Court has jurisdiction over this bankruptcy case and the issues described in this Order pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(N). Both parties agree this Court has jurisdiction to enter final orders in this Adversary Proceeding.[34]

## III. ISSUES

Did NSOP state a cognizable claim for conversion if there is a good-faith dispute as to who possesses ownership rights to the Shade Structure?

Did NSOP plead an actionable claim for unjust enrichment when there could be justification for any alleged enrichment in the APA and Sale Order, and contractual remedies may be available against Legacy Sports?

Did NSOP plead a cognizable claim for replevin?

---

[29] DE 28 at page 15.
[30] DE 32 at pages 3–6.
[31] DE 32 at pages 6–9
[32] DE 32 at page 9.
[33] DE 32 at pages 9–10.
[34] Complaint (DE 1) at ¶ 6 and Answer (DE 12) at page 12 lines 16–19 and page 16 ¶ 13.

Is NSOP's request for relief from judgment superfluous or unripe where there has been no decision made as to who owns the Shade Structure?

## IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW

"Under [Federal Rule of Civil Procedure ("Civil Rule")] 12(b)(6), made applicable to adversary proceedings by [Federal Rule of Bankruptcy Procedure] 7012(b), a trial court may dismiss a complaint for 'failure to state a claim upon which relief can be granted.' To survive a Civil Rule 12(b)(6) dismissal motion, a complaint must present cognizable legal theories and sufficient factual allegations to support those theories."[35] "When considering whether to grant a motion to dismiss, the Court should assume all material facts pleaded are true and interpret them in the most favorable light to the nonmoving party. . . . However, the [c]ourt does not need to assume the truth of conclusory allegations."[36]

### A. CONVERSION

#### 1. The Law of Conversion

Arizona courts, adopting the Restatement (Second) of Tort's definition, define conversion as "[a]n intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."[37] "To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion."[38] The Arizona Supreme Court has explained that "[a] good-faith belief that one had the right to retain the property is no

---

[35] *In re Mack*, 2023 WL 2397345, at *2 (9th Cir. B.A.P. March 7, 2023) (quoting *Johnson v. Riverside Healthcare Sys.*, LP, 534 F.3d 1116, 1121 (9th Cir. 2008)); *see also In re Lloyd*, 511 B.R. 657, 659 (Bankr. D. Ariz. 2014) ("To survive a motion to dismiss under Rule 12(b)(6), the AAA must provide enough factual matter so that the claim is plausible on its face.").
[36] *In re Lloyd*, 511 B.R. at 659; *see also In re Damme*, 2023 WL 2911610, at *3 (9th Cir. B.A.P. April 12, 2023) ("To survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the AAA to relief.").
[37] *Focal Point, Inc. v. U-Haul Co. of Ariz., Inc.*, 155 Ariz. 318, 319 (Ct. App. 1986).
[38] *Case Corp. v. Gehrke*, 208 Ariz. 140, 143 ¶ 11 (Ct. App. 2004).

defense to conversion."[39] The Arizona Court of Appeals further explained, in relevant part, that:

> The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action. 'The plaintiff's right of redress no longer depends upon his showing, in any way, that the defendant did the act in question from wrongful motives, or, generally speaking, even intentionally; and hence the want of such motives or of intention, is no defense. Nor, indeed, is negligence any necessary part of the case. Here, then, is a class of cases in which the tort consists in the breach of what may be called an absolute duty; the act itself (in some cases it must have caused damage) is unlawful and redressable as a tort. Absence of bad faith shall never excuse a trespass, though the existence of bad faith may sometimes aggravate it. Everyone must be sure of his legal right when he invades the possession of another.'[40]

The Restatement (Second) of Torts provides an exception to conversion, stating "one in possession of a chattel who is in reasonable doubt as to the right of a claimant to its immediate possession does not become a converter by making a qualified refusal to surrender the chattel to the claimant for the purpose of affording a reasonable opportunity to inquire into such right." [41]

No Arizona court has ever directly adopted this exception from the Restatement. However, two Arizona Court of Appeals decisions suggest that Arizona courts might follow this doctrine. In *Focal Point, Inc. v. U-Haul Company of Arizona*, the Arizona Court of Appeals held that a party did not commit conversion when they held the property for less than a week while the plaintiff provided verification of ownership of the property.[42] The court stated that the defendant "did not intend to assert a right which was

---

[39] *Patton v. First Fed. Sav. and Loans Ass'n of Phx.*, 118 Ariz. 473, 479 (Ariz. 1978).
[40] *Jabczenski v. S. Pac. Mem'l. Hosps.*, 119 Ariz. 15, 20 (Ct. App. 1978) (quoting *Poggi v. Scott*, 167 Cal. 372, 375 (1914)).
[41] Restatement (Second) of Torts § 240 (1965).
[42] *Focal Point, Inc. v. U-Haul Co. of Ariz., Inc.*, 155 Ariz. 318, 320 (Ct. App. 1986).

in fact inconsistent with the plaintiff's right of control." Similarly in *Valder Law Offices*, although not directly finding a lack of conversion (because the issue was not before the court), the Arizona Court of Appeals, in the context of a law firm holding funds, suggested in a footnote that conversion would not apply because "there was a good faith legal basis on the part of [the plaintiff] to assert that the common fund theory applied here and that maintaining funds in a trust account, as [the plaintiff] did, was appropriate given the state of Arizona law prior to this opinion."[43]

While not binding, other courts have expressly found that there is a difference between a good-faith defense and submitting a dispute of ownership to a court.[44] These courts have held that a party is not liable for conversion when they submit the dispute in ownership to the court and hold the property pending the outcome of the litigation.[45] In *Nevada State Education Association*, the court noted that the defendant "had done nothing other than to hold the property pending the outcome of the hearing."[46]

### 2. Analysis

Here, caselaw on conversion indicates that acting in good faith or having a pure intent are not defenses to conversion. The cases also lean toward suggesting that Arizona would not adopt the Restatement's exception. The Arizona Court of Appeals tells us that intent and proper motives are never a defense to conversion. Stated differently, courts should pay no heed to why a party maintained possession. Instead, the proper question is whether another party asserted possession and whether that possession was in fact wrongful. As explained above, "[e]veryone must be sure of his legal right when he invades the possession of another."[47] Here, the overarching question in the parties'

---

[43] *Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, 253, 129 P.3d 966, 975 (App. 2006).
[44] *Nev. State Ed. Assoc. v. Clark Cty. Ed. Assoc.*, 137 Nev. 76, 86 (2021) ("Although conversion is not excused by mere good faith . . . we have long held that where there is genuine doubt as to the rightful ownership of property, a party may properly 'resort to the judicial process' to resolve that doubt.").
[45] *Id.* at 85 (citing *Wantz v. Redfield*, 74 Nev. 196, 198, 326 P.2d 413, 414 (1958)).
[46] *Id.* at 86.
[47] *Jabczenski*, 119 Ariz. at 20 (Ct. App. 1978).

dispute is who owns the Shade Structure. There is no question that AAA is in possession of the Shade Structure. If the Court determines that NSOP is the proper owner, AAA's possession has been wrongful, and they may be liable for conversion.

Even if applicable, the cases supporting the bona-fide dispute exception are different from this case because of one important distinction. The two Arizona cases, and the cases from other jurisdictions all contemplate the defendant merely holding the property in controversy while the proper owner is determined. In *Focal Point, Inc.,* the court noted that the defendant was not asserting an ownership interest in the property but was merely holding it while the plaintiff verified ownership.[48] Similarly, in *Nevada State Education Association*, the court noted that the defendant was merely holding the property and differentiated a case in which a defendant had sold the property in question. According to NSOP, AAA is doing more than merely possessing the Shade Structure pending the outcome of this litigation. NSOP claims AAA is holding events under the Shade Structure, selling sponsorship space, and otherwise using the Shade Structure, thereby asserting ownership and profiting from use of the Shade Structure. At oral argument, AAA argued the Shade Structure was merely in place and AAA was only using its property underneath the Shade Structure. There is at least a question of fact as to the amount of use of the Shade Structure. For these reasons, even if the bona-fide dispute exception were to be recognized by Arizona Courts, that exception would not apply here.

The Restatement allows for a qualified refusal to turnover property when there is a "reasonable doubt as to the right of a claimant."[49] Even if this Court should follow the Restatement, taking all of NSOP's factual allegations as true, there is a question of fact as to whether there is "reasonable doubt" as to NSOP's ownership of the Shade Structure.

---

[48] *Focal Point, Inc. v. U-Haul Co. of Ariz., Inc.*, 155 Ariz. 318, 320 (Ct. App. 1986).
[49] Restatement (Second) of Torts § 240 (1965).

This question of fact precludes the granting of the Motion to Dismiss even if the Restatement's "reasonable doubt" exception were employed by this Court.

At oral argument, AAA argued that allowing NSOP's counterclaims would harm this District's bankruptcy sales by casting doubt on every sale made in bankruptcy pursuant to 11 U.S.C. § 363. While confusion is often present in such sales, the facts of this case are very unusual and quite distinct. This Court is not concerned that its Order will cast shade over future sales in this District. This Court views the evolution of this dispute between the parties as *sui generis*.

For these reasons, the Court denies the Motion to Dismiss as to the conversion claim.

### B. UNJUST ENRICHMENT

#### 1. The Law of Unjust Enrichment

Under Arizona law, "unjust enrichment is a form of restitutionary relief available upon either implied in fact contract or quasi-contractual grounds."[50] To recover under a theory of unjust enrichment, a plaintiff must demonstrate five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.[51] As to the last element, recovery under unjust enrichment is precluded when there exists a contract specifically governing the rights and obligations of each party.[52]

#### 2. Analysis

NSOP has satisfied the first three elements of unjust enrichment by stating that AAA has been enriched and that NSOP has been impoverished by AAA's retention of the Shade Structure. AAA does not contend otherwise.

---

[50] *USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 354 (App. 1986).
[51] *Freeman v. Sorchych*, 226 Ariz. 242, 251 ¶ 27 (Ct. App. 2011).
[52] *USLife Title Co. of Arizona*, 152 Ariz. at 354 (App. 1986).

AAA contends that the unjust enrichment claim must be dismissed because NSOP cannot prove an absence of justification. Similar to the conversion argument, AAA argues that it is justified in maintaining possession of the Shade Structure given the good-faith dispute over the interpretation of the APA and Sale Order. AAA points to a case from the District Court of Rhode Island which states:

> "[n]ot every unjust enrichment warrants usage of equity. Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract. In other words, an enrichment is justified if it is the result of, or finds its explanation in, the term of a valid juridical act between the impoverishee and the enrichee or between a third party and the enrichee."[53]

In *Ostroff*, the court relied on the fact that the defendant bank's actions were justified because a previous borrower had defaulted on his obligation and therefore had a valid contractual right to foreclose on the property.[54]

AAA would have the Court hold that, because AAA's actions in maintaining possession of the Shade Structure *might* be justified, there is no absence of justification and, therefore, NSOP's unjust enrichment claim fails. However, this is not what the case cited by AAA holds. Under *Ostroff,* AAA must in fact be justified in its actions. If the Court determines that the Shade Structure belongs to NSOP and was not transferred by APA, there would be an absence of justification for AAA's possession. However, if the Court determines that the Shade Structure was transferred as part of the APA, there would be a justification for the enrichment and, therefore, NSOP's unjust enrichment claims would fail.

AAA argues the claim of unjust enrichment must be dismissed because NSOP may have a contract claim against Legacy Sports. However, a contract claim against another party does not bar an unjust enrichment claim against an enriched party.[55]

---

[53] *Ostroff v. F.D.I.C.*, 847 F. Supp. 270, 276–77 (D.R.I. 1994).
[54] *Id.*
[55] *See USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 354, 732 P.2d 579, 584 (App. 1986).

While NSOP's unjust enrichment claim can presently stand against AAA, it cannot stand against Mr. Burke. A director may be personally liable for an entity's commission of a tort when the director participates or has knowledge that amounts to acquiescence in the conduct.[56] However, unlike the tortious conversion claims brought by NSOP, its unjust enrichment claims are quasi-contract claims not tort claims.[57] All actions in this case were done through AAA. Personal liability for company actions does not apply in connection with NSOP's unjust enrichment claims.

The Motion to Dismiss as to the unjust enrichment claim as to AAA alone is denied. The Motion to Dismiss as to NSOP's unjust enrichment claim against Mr. Burke personally is hereby granted.

## C. REPLEVIN

### 1. The Law of Replevin

Under Arizona law:

> In an action for the recovery of specific personal property, if the property has not been delivered to the plaintiff . . . the jury, if its verdict is in favor of the plaintiff . . . shall determine the value of the property and may at the same time assess the damages, if any are claimed in the complaint or answer, which the prevailing party has sustained by reason of the taking or detention of such property.[58]

In certain circumstances, plaintiffs may seek a pre-judgment delivery of property through a writ of replevin. However, "[a] provisional order of replevin . . . does not determine ownership of the disputed property; it simply grants the plaintiff the right of possession of the disputed property only until the matter is resolved by trial of the disputed issues."[59] But there is a difference between pre-judgment replevin and post-judgment replevin.[60]

---

[56] *See B2B CFO Partners, LLC v. Kaufman*, 856 F. Supp. 2d 1084, 1093 (D. Ariz. 2012) (citing *Bischofshausen, Vasbinder & Luckie v. D.W. Jaquays Mining & Equip. Contractors Co.*, 145 Ariz. 204, 700 P.2d 902, 908–09 (Ariz. Ct. App. 1985)).
[57] *USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 354, 732 P.2d 579, 584 (App. 1986).
[58] A.R.S. § 12-1307.
[59] *Beck v. Hy-Tech Performance, Inc.*, 236 Ariz. 354, 360 ¶ 22 (Ct. App. 2015) (citations omitted)
[60] *Id.*

Post-judgment, a successful plaintiff may obtain "recovery of the disputed property" and "damages for its wrongful detention" through a replevin action.[61]

### 2. Analysis

AAA argues, and the Court agrees, that NSOP has not properly pled a claim for pre-judgment replevin. However, as explained in NSOP's response to the Motion to Dismiss, NSOP is not seeking a pre-judgment replevin. Instead, it is seeking recovery of Shade Structure and damages only if judgment is ultimately entered in its favor as is allowed under A.R.S. § 12-1307. Importantly, AAA has agreed that if a non-appealable judgment is entered in favor of NSOP on the Shade Structure ownership dispute, it will voluntarily turn the Shade Structure over to NSOP. For this reason, the Court hereby grants the Motion to Dismiss on the replevin claim.

## D. LIMITED REQUEST FOR RELIEF FROM ORDER

### 1. The Law of Federal Rule of Civil Procedure 60

Civil Rule 60(b), made applicable here under Federal Rule of Bankruptcy Procedure 9024, states:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.[62]

---

[61] *Id.*
[62] Fed. R. Civ. P. 60(b).

Civil Rule 60(c)(1) determines when a motion can be filed: "(1) Timing. A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."[63]

### 2. Analysis

Based on the relief NSOP seeks in this Adversary Proceeding, its request for relief from the Sale Order is unripe and may be superfluous. First, the Court has not yet found that the Sale Order approving of the APA included the Shade Structure. NSOP's request for relief from a potential harmful interpretation of the Sale Order is unripe at this stage. Furthermore, if the Court agrees with NSOP and determines that the Shade Structure is NSOP's property, this decision would render superfluous NSOP's request under Rule 9024. This does not, however, prevent NSOP from arguing that the Sale Order was not intended to convey ownership of the Shade Structure in this case.

NSOP's request for relief from the Sale Order is hereby dismissed without prejudice as it is premature.

### E. SPOUSAL LIABILITY

Given NSOP's agreement to voluntarily dismiss its claims against J. Doe Burke, the Court hereby grants the Motion to Dismiss NSOP's claims against J. Doe Burke.

### V. CONCLUSION

The Court grants AAA's Motion to Dismiss with regard to NSOP's claims against J. Doe Burke. The Court also dismisses NSOP's unjust enrichment claim as to Mr. Burke, NSOP's replevin claim, and NSOP's request for relief from the Sale Order. The Court denies AAA's Motion to Dismiss regarding NSOP's conversion and unjust enrichment claims against AAA and denies the Motion to Dismiss to the extent Mr. Burke seeks to dismiss the conversion claim against him.

---

[63] Fed. R. Civ. P. 60(c)(1).

1. **ORDERED**

2. **DATED AND SIGNED ABOVE.**